STRAIT BROS. et al. v. CHANEY.*
(No. 6156.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 5, 1919. Rehearing Denied Feb. 26, 1919.)

1. USE AND OCCUPATION ⬅8 — PLEADING — PETITION.

A petition, alleging that defendants, without plaintiff's knowledge or consent, entered upon plaintiff's land, which was inclosed with defendants' land in large pasture, used and occupied it, and shared profits arising therefrom, and prevented plaintiff from renting the same, *held* not demurrable for failing to state that defendants were in exclusive possession thereof.

**2. PLEADING ⟨Key⟩34(3)—GENERAL DEMURRER— INTENDMENTS.**

Every intendment must be resolved in favor of a pleading assailed by general demurrer.

**3. USE AND OCCUPATION ⟨Key⟩1—RENTS.**

That plaintiff's land was inclosed with that of defendants' merely secured the right to each party to pasture cattle upon the land in proportion to the number of acres in the inclosure owned by him, but defendants could not lease plaintiff's land to others for grazing and appropriate the rent money.

**4. USE AND OCCUPATION ⟨Key⟩1 — LEASE — EXCLUSIVE USE.**

Where plaintiff's land was fenced in with that of defendants', defendants' leasing of all the land for pasture without plaintiff's knowledge was an exclusive and special use of the land, and plaintiff can recover the rent money collected for use of his land.

**5. VENUE ⟨Key⟩22(3)—CODEFENDANTS.**

Where all the defendants residing within the county obtained a favorable judgment on plea of limitation, the court's jurisdiction was not destroyed as to remaining defendants, where the first defendants were not fraudulently impleaded, for plaintiff was not bound to anticipate the interposing of the plea.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by W. S. Chaney against Strait Bros., as a partnership and as individuals, and others. Judgment for plaintiff against Strait Bros. and certain other defendants, from which they appeal. Affirmed.

Jas. D. Crenshaw and Frank H. Booth, both of San Antonio, for appellants.

J. F. Carl, P. H. Swearingen, Jr., L. Allen, and George G. Clifton, all of San Antonio, for appellee.

FLY, C. J. Appellee instituted this action against Strait Bros., as a partnership and as individuals, and Price, Ritchie & Buttles, as a partnership and as individuals, to recover for the use of appellee's land, consisting of 640 acres, for the time beginning in 1908 and ending with 1917, alleging that the defendants had conspired to use his land without paying for the rent of the same, and had used the same for the time indicated, and had prevented appellee from renting the land to others. Strait Bros. and Joel Buttles filed pleas of privilege to be sued in other counties than Bexar county, which were overruled, and all the defendants interposed pleas of limitation, which were sustained, except for the years 1915, 1916, and 1917, and judgment was rendered in favor of appellee against Strait Bros. Jesse B. Strait, Yancy Strait, and Joel Buttles, but the court rendered judgment for their costs in favor of J. E. Ritchie and Lucilius Price; it appear-

ing that the partnership of Price, Ritchie & Buttles was dissolved in 1913.

The facts show that appellants took possession of appellee's 640 acres of land in 1913, and appropriated it to their use and benefit until the end of 1917, renting it and receiving for its use the sum of 25 cents an acre, and they are justly indebted to appellee for the years 1915, 1916, and 1917 in the sum of $320, as found by the trial judge.

[1-3] The first assignment of error complains of the action of the court in overruling a general demurrer to the amended petition on which the cause was tried. The following allegations are found in the petition:

"On the 1st day of January, 1908, defendants, without the knowledge and consent of your plaintiff, entered upon the said premises owned by your plaintiff, as above described, and used and occupied the property for a period of nine years up to and including the 1st day of January, 1917, and the defendants each and all shared the profits and revenues accruing by reason of the said use and occupancy of the said land so owned by your plaintiff; that your plaintiff, during said period at various times, tried to rent the said premises to some of these defendants, as well as to others, but these defendants schemed and conspired together to prevent your plaintiff from securing a renter for the said premises, and concealed all of these facts from the knowledge of your petitioner, and by reason of the facts above alleged your plaintiff was unable to rent said land.

"Plaintiff further shows to the court that the land above described was in a larger inclosure, and not fenced off separately, and for this, etc., he resides in a county distant from that in which this land is situated, among other reasons, he did not know that the defendants were deriving revenues from said land and using the same; and on divers occasions he attempted to rent said land to the defendants, or some of them, and particularly the firm of Price, Ritchie & Buttles, and they declined to rent the same from him either at that time or any other time. But, during all of the time herein alleged, the defendants were occupying said land, and using it together, and deriving large revenues therefrom; and plaintiff says that it became the duty of the defendants, when he interviewed them with reference to renting said land to them for pasturage purposes, and they declined to do so, to inform him that they were so occupying and using said land and deriving revenues therefrom, but this they absolutely failed to do, and the failure so to inform him of their use and occupancy of said land at a time when it became their duty to speak was equivalent to and was a fraud upon this plaintiff."

The petition was not subject to attack through a general demurrer. If, as alleged, appellants entered upon appellee's land without his knowledge or consent, and used and occupied it, and shared the profits and revenues arising from it, and prevented appellee from renting the same, they would be liable to appellee for such revenues, no matter if

the land was inclosed in a pasture with over 4,000 acres of land belonging to appellants. Every intendment being resolved in favor of a pleading assailed by general demurrer, it must be read into the petition that as appellants were obtaining all the profits and revenues from the use of the land, they were in exclusive possession of the same. We cannot accede to the proposition that a person can rent the property of another in the same inclosure and use the revenues to the exclusion of the owner. It may be that under the system in Texas the owner of a pasture in which another has land could pasture his own stock thereon without being liable to the other for such pasturage, but we cannot go to the extent of holding that the owner can rent the land of the other for farming or pasturage purposes and not be liable for the rents arising therefrom. By leasing the land the owner of the large portion in the pasture or farm is appropriating the property of another to his own use and benefit and depriving that other of the same. The open use of the land did not deprive appellee of his rights, nor fortify any claim of appellants to the revenues arising from the property of another. While it has been the policy of this state to permit stock to run at large upon any one's uninclosed land, it has never been held or imagined that a person could rent the uninclosed land to another to use by herding his cattle upon it. The land being inclosed with that of appellants merely secured the right to each party to pasture cattle upon the land in proportion to the number of acres owned by him, and while the doctrine might possibly be stretched so as to permit one party to pasture all the land, it could not in equity and justice permit leases to others and an appropriation of the lease money by one of the owners of the inclosed land. No such doctrine is advanced in Pace v. Potter, 85 Tex. 473, 22 S. W. 300, Lyons v. Slaughter, 87 S. W. 182, and Durst v. Mann, 35 S. W. 950. The case of Pace v. Potter merely holds that cattle running on the uninclosed land of another does not constitute a trespass, and that where the lands of two or more persons are inclosed in the same pasture, each owner can pasture cattle in proportion to the number of acres he owns. It is also held that the exclusive possession of one owner would make him liable to the others. To the same effect is Lyons v. Slaughter, and it was also held that an owner would be liable for any stock pastured over and above his pro rata. In the case of Durst v. Mann it was held that one who fences land with his own and uses the land as a pasture to the exclusion of others will be liable for the rental value of the land.

[4] The ·case of St. Louis Cattle Co. v. Vaught, 1 Tex. Civ. App. 388, 20 S. W. 855, clearly states the law as applied to this case under a similar but not so cogent a state of facts. The facts in that case were that Vaught owned a section of land, which was in an inclosure belonging to the cattle company. The inclosure was used as a pasture by the company to pasture its cattle. The company had from 75,000 to 100,000 acres in the pasture. Free ingress to and egress from the land was not denied the owner. The court said:

"In this state, on account of the condition which has existed from time immemorial of the grazing lands, the owner of such property cannot complain, as long as it remains a portion of the 'commons,' that the cattle of another should roam over it and graze upon it at will. * * * This doctrine, however, does not authorize the owner of cattle, by affirmative conduct on his part, to appropriate the use of such lands to his own benefit. He will not be permitted thus to ignore the truth that every one is entitled to exclusive enjoyment of his own property. In this case, the appellant, by means of fences constructed or maintained by it, inclosed the land of the appellee in such manner as to reap from it those benefits which, as a rule, are incident exclusively to ownership. The use and enjoyment of the property under such circumstances import necessarily the idea of liability."

There is no conflict between that case and those cited by appellants. The facts of the case differentiate it from the others because it did not appear that it was absolutely necessary to fence the land of appellee in order to fence that of the cattle company. The authority of the decision has never been questioned, but it has been cited with approval by at least one other Court of Civil Appeals. Tandy v. Fowler, 150 S. W. 481; Jameson v. Board, 171 S. W. 1037. The Supreme Court has held that the case of Durst v. Mann, herein cited, is not in conflict with St. Louis Cattle Company, herein cited, nor Abbey v. Shiner, 5 Tex. Civ. App. 287, 24 S. W. 91; Mann v. Durst, 90 Tex. 76, 37 S. W. 311. The Vaught Case is approvingly cited by the Court of Civil Appeals in Durst v. Mann. The cited case of Abbey v. Shiner was decided by this court and sustains our decision in this case. This court held in that case that when two owners had land in a single inclosure, and one uses all of it, that:

"In order to render him liable, he must make some exclusive or special use of the land not belonging to him."

It cannot be said that it is not an exclusive or special use of land to rent it and collect and appropriate the rent money. No case has so held, so far as we have been able to ascertain.

In this case it is unnecessary to go to the extent gone by the court in St. Louis Cattle Co. v. Vaught, for the facts in this case show a clear and unequivocal appropriation of the revenues arising from the rental of the land of appellee, and it is no ground to

deny him a recovery of such revenues by proving that he might have gone in and possessed his land if he had so desired. It was shown that he did not know that his land was being rented by appellants. His land was appropriated and used for revenue without his consent.

We approve the findings of fact of the trial judge, which are supported by the statement of facts. The facts show exclusive possession upon the part of appellants.

[5] The pleas of privilege were properly overruled. A portion of the defendants resided in Bexar county, and the fact that on the trial the Bexar county defendants obtained judgment in their favor on a plea of limitations did not destroy the jurisdiction of the court. When it once attached it remained in force throughout the pendency of the cause. There is no evidence whatever that the parties who pleaded limitation were fraudulently impleaded. Appellee was not called upon to anticipate that a plea of limitations would be interposed to his claim. When he sued the claim was a valid one against all the parties, and was only destroyed as to some of them by defensive matter pleaded by them.

Appellants, under their second assignment of error, advance the proposition that there is "no evidence or finding" that appellants excluded appellee from the land. The trial judge found that appellants "entered upon said premises and used and occupied it exclusively for about nine years," and the evidence, as hereinbefore stated, fully justifies the finding. The appellants admitted that they rented the land in the pasture, and collected the rents, and appropriated them. Equity, honesty, conscience, and fair dealing cry out against the injustice of an appropriation of money rightfully belonging to another, as was done in this case.

The judgment is affirmed.