### PERRY v. STRINGFELLOW et ux.

No. 10712.

Court of Civil Appeals of Texas. Galveston.

Feb. 3, 1938.

Rehearing Denied March 3, 1938.

Masterson & Bryan, J. P. Bryan, and Cleveland Davis, all of Angleton, for appellant.

A. R. Rucks, of Angleton, and Robt. M. Lyles, of Houston, for appellees.

CODY, Justice.

This appeal is from the action of the trial court granting, after hearing on notice, a temporary injunction. As such it has been advanced on the docket of this court. For convenience appellees and appellants will be designated as they were below, plaintiffs and defendants, respectively.

Plaintiffs, husband and wife, alleged that they own and are in charge and control of all those certain tracts of land, consisting of about 3,200 acres out of the J. F. Colvit Survey in Brazoria County, commonly known as the S. H. Hudgins pasture, which is bounded on the west by a good substantial fence, and on the north, east, and south by Oyster Creek, Intercoastal Canal, and East Union Bayou, respectively, which are natural barriers, and that such inclosing fence and natural barriers are sufficient to turn ordinary livestock. That the pasture is of the type designated on the Gulf Coast as "salt grass" and is capable of properly maintaining one head of cattle to eight acres. That defendant owns 15 acres of land inclosed within plaintiffs' pasture, and is thereby entitled to keep within said inclosure such number of head of livestock as 15 acres will sustain, namely, two, and no more. But that defendant has driven a large number of cattle into plaintiffs' inclosure, and is threatening to place additional cattle therein sufficient to exhaust the grazing capacity thereof. That plaintiffs have a large number of cattle to feed and fatten during the fall and winter months of 1937 and 1938, and have no place or means other than said pasture in which to do so. And that if defendant's trespass and threatened trespass is not restrained and enjoined, the cattle placed within said inclosure by him will consume all the grass, and leave plaintiffs without forage for their cattle for such period, to their irreparable injury, and against which they have no adequate remedy at law. That plaintiffs are therefore entitled to expel from said inclosure all cattle except the number defendant is lawfully entitled to keep therewithin because of his ownership of, and control over, said 15 acres within plaintiffs' inclosure. The petition closes with the usual prayer for restraining and enjoining defendant from keeping within such inclosure more cattle than his land therewithin will properly maintain.

The learned trial judge filed findings of fact to the effect that 35 years ago a man by the name of Hudgins leased the land involved in this suit from its then owner, the Brazos River Channel & Dock Company, and constructed a fence across its west end. That such fence, together with the natural water boundaries, consisting of East Union Bayou, Oyster Creek, and Intercoastal Canal, was sufficient to confine therein, and repel therefrom, ordinary livestock. That Hudgins went into possession of all such inclosed land, consisting of approximately 3,600 acres, 200 acres of which he owned in fee, and over all of which he exercised control. That in 1909, subsequent to the lease to Hudgins, the Brazos River Channel & Dock Company subdivided into 5-acre tracts a large body of land, including a large portion of the land within the inclosure involved in this suit, and sold such tracts to numerous persons. That after this subdivision was made, and the 5-acre tracts sold, Hudgins continued in possession of the inclosure, fenced by him as aforesaid before the subdivision, using it for grazing. He made no claim, however, that his occupancy was adverse to the right of the owners of these 5-acre tracts to use and occupy their land, situated within his inclosure, should they choose to do so. That during the year 1929, Hudgins leased the inclosure to plaintiff R. E. L. Stringfellow, who had previously acquired the fee to 300 acres therewithin; and that Hudgins at that time sold to Stringfellow the fence theretofore constructed, and which formed the only artificial barrier inclosing the 3,600 acres, and put String-

fellow in possession of all the land within the inclosure. Thereafter, about October 1, 1930, Hudgins leased 200 acres of the land within the inclosure that he had turned over to Stringfellow to one Moller, who placed two to three hundred head of cattle in said pasture. That about October 1, 1931, Moller withdrew his cattle therefrom. During the period Moller kept cattle in the pasture, defendant kept about 40 head of horses there. That at the time of the 1934 tidal wave, defendant had in the pasture, in addition to the 40 head of horses, about 130 head of cattle; that some of his horses were lost in the tidal wave, and the remainder of the horses remained in the inclosure up until the present.

The court found further that after December 14, 1929, and prior to August 21, 1933, plaintiffs acquired from Hudgins the lands owned by him in fee within the inclosure. And that subsequent to the withdrawal of the Moller cattle, plaintiffs have been in exclusive possession and control of the inclosure, and all of the lands therein, but are exercising such control in full recognition of the right of defendant to his 15 acres of land. That plaintiffs hold deeds and leases to about 2,000 acres, but regardless of whether the grantors in said deeds or lessors in said leases owned the land described in them, respectively, plaintiffs are asserting their right to control said 2,000 acres within the inclosure by reason of such deeds and leases, and have been in exclusive possession of such lands, claiming the right to use and occupy the 2,000 acres by virtue of such deeds and leases, and by virtue of possessing them. That subsequent to the time plaintiffs took over the control and possession of the lands within the inclosure, defendant acquired the fee to 15 acres therein. That since the institution of this suit defendant has acquired deeds and leases purporting to convey and lease to him 125 additional acres, but that no evidence was offered showing any right in the grantors and lessors in such deeds and leases to convey or lease the lands described therein.

The court further found that the tidal wave of 1934 washed down a portion of the fence placed there by Hudgins some 35 years before. And that defendant, with the consent of 'plaintiffs and under an agreement that he might use the inclosure for the remainder of the year 1934, repaired and rebuilt the fence; and in so doing used new material in rebuilding 2,800

feet of the fence, at the cost to himself of about $100. That during a part of the years of 1936 and 1937, the inclosure was laid under tick quarantine, during which time plaintiffs did not place cattle therein, as they did not want to incur the trouble and expense of dipping, and Mrs. Stringfellow caused a hundred yards of fence, as well as the gate, to be removed. But when the quarantine was lifted shortly before this suit was instituted, and plaintiffs had the fence repaired and the gate re-installed, shortly thereafter defendant drove 200 head of cattle into the pasture, and, but for the fact he was restrained by court order in this suit, would have placed therein 400 head of steers, additionally.

The court found further that plaintiffs used the land within the inclosure for a winter pasture, removing their cattle in the summer months, at which time the gate was left open by permission, and plaintiffs made no effort during the summer months to keep the gate closed. Further, no complaint was ever made by any owners of the 5-acre tracts, across which the fence (the west end or artificial barrier) runs, of the acts of Hudgins and of plaintiffs in maintaining such fence. Further, that there are some 5-acre tracts within the inclosure which plaintiffs neither own nor have leased, but these plaintiffs claim the right to use by reason of having them inclosed and having prior possession thereof. In other words, plaintiffs are not claiming adversely to the true owners of these tracts, but are claiming the right to use these tracts as against everyone except the true owners, by the right of prior possession. That defendant has a well and windmill on one of his 5-acre tracts at which any cattle ranging within the pasture can water. That defendant does not intend to place over 400 head of cattle in the inclosure this year (i. e., fall and winter of 1937–1938); that plaintiffs intend to stock it with all the cattle it will properly maintain, saving only the right of defendant to place therein the number of head his 15 acres will properly maintain. That the land will properly maintain one head of cattle to 6 acres, and defendant's 15 acres will properly maintain 3 head.

The court further found that during the time plaintiffs have had possession of the inclosure, some stock had, in addition to that placed therein by plaintiffs and defendant, been placed therein by J. E. Pybus, Hamp Robinson, by Hayes, by Bingham, by Bill Ayers, by Brock, and by Moller. Hayes

and Bingham acted under the permission of plaintiffs. The evidence does not disclose whether or not Brock, Pybus, Robinson, or Ayers acted with the consent of plaintiffs.

The court found as conclusions of law: That plaintiffs, as a matter of law, were in possession of all the land within the inclosure, claiming the right thereto, with the exception of defendant's 15 acres, and by reason of prior possession were entitled to exclude defendant until such time as he may show a right better than plaintiffs. That, with the exception of the 15 acres, defendant has failed to show a better right than plaintiffs. That plaintiffs are entitled to retain possession and exercise control over the land within the inclosure, except the 15 acres, to the exclusion of defendant. That under the fence-rebuilding agreement of 1934, the relation of landlord and tenant was established, whereby defendant's possession became that of a tenant (except as to the 15 acres), and whatever possession defendant has had (his 15 acres excepted) since, has been that of a tenant holding over, and is subordinate to plaintiffs' right of possession to the land inclosed. That plaintiffs own the fence. That defendant is entitled to place 3 head of cattle in the inclosure in right of his 15 acres, and plaintiffs are entitled to enjoin defendant, pendente lite, from keeping more than 3 head of cattle therein, and from attempting to prevent plaintiffs, etc., from expelling all cattle placed therein by defendant, in excess of 3 head. And a temporary injunction to this effect was issued upon the filing by plaintiffs of a $500 bond.

Defendant has vigorously assailed the court's findings of facts, and conclusions of law, and filed numerous exceptions thereto. However, with one or two exceptions, defendant is not urging such exceptions on this appeal, apparently on the ground that, even taking the facts to be as found by the court, such facts are insufficient to warrant his action in issuing the writ of temporary injunction. And to this end, defendant urges the following as grounds requiring reversal:

1. That the temporary injunction issued by the court is in effect a mandatory injunction dispossessing defendant from occupancy with his cattle of lands in the inclosure other than his 15 acres. And that regardless of how defendant may have obtained the possession of which he has been deprived by the court's temporary injunction—whether defendant acquired possession by legal right, or as a mere trespasser, or as a tenant holding over—courts of equity do not employ the writ of injunction to effect the dispossession of one in actual possession. The remedy is solely an action at law.

2. That, if it be granted for present purposes, plaintiffs had a superior right of possession, then they had a complete and adequate remedy at law, through (a) forcible entry and detainer; (b) trespass to try title, with writ of sequestration, and a statutory lien attaching to the cattle of one in the position the court found defendant occupied, and in favor of the injured party, which position the court found plaintiffs occupied, to secure to such party the payment of such damages as he can prove he suffered.

3. That plaintiffs failed to prove that they possessed any right which had been invaded by defendant, as they owned at most (even accepting the court's finding in that respect) but 2,000 acres out of the 3,600 acres in the inclosure, leaving 1,600 acres from which plaintiffs had no right to have cattle excluded, and in respect to which they would suffer no injury if same were grazed by cattle belonging to defendant, or anyone else.

4. That the temporary injunction issued in this case is erroneous because it grants all the relief to which plaintiffs could possibly be entitled, all they claim the right to, on final hearing.

5. That plaintiffs are admittedly trespassing, along with defendant, on the tracts of some 400 owners, inclosed in the 3,600-acre inclosure, and by reason of the rebuilding of the fence damaged by the 1934 tidal wave are violators, along with defendant, of the criminal statutes against constructing fences across the land of others, and as wrongdoers, are not entitled to the aid of an injunction against a co-wrongdoer.

6. That the trial court erred in crediting defendant with owning or controlling but 15 acres within the inclosure, because defendant introduced deeds and leases to other land in the inclosure, and in a suit of this nature it was not necessary for defendant to deraign his title from the sovereign.

7. That regardless of who owns the fence across the west end of the inclosure, the inclosing fence, and regardless of who placed cattle within the inclosure first, it is not disputed that defendant, along with plaintiffs and numerous other persons, owns some land within the inclosure. That it is not

disputed, but expressly found by the court and conceded by plaintiffs, that defendant has a pro rata right, calculated on the proportion his acreage bears to the acreage of the inclosure, to graze cattle within the inclosure, equal to the pro rata right of all other owners of tracts within the inclosure, to graze cattle therein. That it is not disputed that since 1931 defendant has ranged horses and cattle within the inclosure. That it is not disputed that the 5-acre tracts, to which plaintiffs have neither deeds nor leases, are not fenced off, and these tracts have since 1931 been at least as subject to being grazed on by the cattle of defendant as they have been to cattle of plaintiffs. That as the only use and possession made of the 5-acre tracts has been grazing cattle thereon, it is impossible from such state of facts to conclude that the possession of plaintiffs in grazing these 5-acre tracts differs in character from the possession of them by defendant; or, basing the right of plaintiffs to graze such tracts on the character of possession maintained by them, it is impossible to conclude that plaintiffs' right to graze said 5-acre tracts is prior or superior to that of defendant, as the possession of defendant has been of the same character as that of plaintiffs.

■■ The plaintiffs and defendant are each seeking to avail themselves of the right to possess and use, as against each other, tracts of land within the inclosure which they admittedly have no right to use and possess as against the admittedly superior rights of the true owners of such tracts. This contest being for possession of land belonging to neither of the contestants, it must be determined by the rule that prior possession gives the better right. The idea is a mistaken one that this rule is a rule of evidence and nothing more. It is a rule of public policy as well. It enforces resort to courts, and not to self-help, to settle disputes involving the right of possession, and thereby prevents breaches of the peace. Under this rule, it would seem that, so late as 1929, Hudgins, as against all the world except the true owners of the 5-acre tracts located in the Hudgins pasture, had the superior right of possession. He had rented the pasture from the Brazos River Channel & Dock Company and fenced it off, some years before the Dock Company sold off these 5-acre tracts located in such pasture. After such subdivision and sale he continued to hold these 5-acre tracts under his fence, exercising possession and control over them, but recognizing the superior rights of the several owners of such tracts. This recognition of the superior rights of the true owners of the tracts was equally the recognition by Hudgins of his liability to the true owners for any damages they might sustain by reason of his use and occupancy of their tracts, inclusive of the liability to them for the rental value thereof. Being liable to the true owners for the value of the use of their tracts, held by him under his fence, he likewise had the right to exclude from such tracts every one except the original purchasers from the Dock Company, or the successors in interest of such purchasers. Now we do not understand that, technically speaking, Hudgins was a naked trespasser. He was placed in possession of the land he fenced off by the then true owner; his entry thereon was lawful. But his liability for damages to the true owners of the tracts was doubtless the same as it would have been had his entry been that of a mere naked trespasser.

■ From the court's findings of fact, binding on us, we must take it that Hudgins placed plaintiffs in possession and control of the Hudgins pasture, and sold them his fence, and invested them with his right of prior possession of said tracts inclosed in his pasture, which right was inferior only to the rights of the true owners. It was undoubtedly competent for Hudgins to transfer such superior right of possession. Even a naked trespasser, squatting on land to acquire title thereto by limitation, can transfer his prior right of possession. This being true, the result of the transfer to plaintiffs by Hudgins of his right of prior possession to the 5-acre tracts inclosed in the Hudgins pasture was to invest plaintiffs with the legal consequences of owning the prior right of possession to such tracts. If defendant had owned no acreage within the Hudgins pasture, plaintiffs could have enjoined him from placing any cattle therein at all. As the trial court found, which finding is binding on us, that defendant owned 15 acres, then it follows that defendant is entitled to keep in the Hudgins pasture such number of cattle as the acreage controlled by him is capable of sustaining, and no more. Lyons v. Slaughter, Tex.Civ.App., 87 S.W. 182; Lazarus v. Phelps, 152 U.S. 81, 84, 14 S.Ct. 477, 38 L.Ed. 363; Strait Bros. v. Chaney, Tex. Civ.App., 209 S.W. 219; Popham v. Wright, Tex.Civ.App., 229 S.W. 335. Hence, under the fact findings of the trial court, defend-

ant must be held to have invaded the rights of plaintiffs in turning more than three head of cattle into the Hudgins pasture. For this invasion of their rights, plaintiffs would have a suit for damages. But we fail to see why the court might not enjoin such trespass by defendant on their possession, as was done.

In the Popham Case, supra, plaintiffs' pleadings were that the plaintiffs owned and controlled a pasture consisting of 114 sections, used by them for pasturing cattle and horses. That on August 4, 1919, defendant entered into a contract with the then executors of the Popham estate, to pasture certain cattle in such pasture until May 1, 1920, and expressly bound himself to remove such stock not later than May 1, 1920. That this agreement to remove was by defendant violated. And plaintiffs sought a temporary mandatory injunction compelling the removal, etc. Upon a hearing after notice on the application for temporary injunction, defendant answered that he owned or controlled 4,000 acres of land located within plaintiffs' pasture; that he owned 160 head of grown cattle, 120 calves, and 45 horses; and that there was plenty of grass and water on the land controlled by him within plaintiffs' pasture to properly care for his stock, etc. Upon the hearing it was established that plaintiffs owned and controlled between 100 and 134 sections, all fenced. That within these fences there were about 20 sections owned or controlled by other persons not parties to the suit. That defendant controlled about 6 sections within plaintiffs' pasture. Also that he breached his contract to remove his cattle on May 1, 1920, from land leased by him from the Popham executors, and breached an additional contract to remove all his cattle from the pasture not later than May 20, 1920. That at the time of the hearing defendant had inside the pasture 152 cows, 132 calves, 10 yearlings, and 50 horses, and no water on the lands owned by him. That the land would support 30 head the year around, and the court found that it would support 45 head until spring. The trial court refused to grant the temporary mandatory injunction. On appeal the El Paso Court of Civil Appeals after noting that defendant had 344 head, whereas at the rate of 45 head to a section he was entitled to pasture but 270 head, found that he was pasturing 74 head more within the inclosure than he was entitled to pas-

ture, and that plaintiffs therefore had the right to a process removing such excess. And further, the fact that other persons had lands within the inclosure being used by them would be no reason for denying the writ.

Now we do not construe the ruling in the Popham Case as being intended by the court to transfer, through the instrumentality of an injunction, the possession of the land involved from defendant, as a holding-over tenant, to plaintiffs, the true owners. The court, as we understand the opinion, limited the writ of injunction to the removal of the excessive number of head which defendant had turned into the pasture which he was entitled to pasture either in his capacity as an owner of the land in the pasture, or in his capacity of a hold-over tenant of plaintiffs. It is undoubtedly the rule that an owner out of possession has no right to resort to a court of equity to effect the transfer of possession from his holding-over tenant to himself through the instrumentality of a writ of injunction. Hill v. Brown, Tex.Com.App., opinion adopted by Supreme Court, 237 S.W. 252. The effect of the ruling in the El Paso case, as we construe it, is that a person has the right to place such number of cattle in another's pasture as the acreage therein controlled by him is capable of sustaining, and no more. And further, that with reference to any excess he places in such pasture, he is a trespasser; and that the owner of the pasture is not limited to an action for damages, but has the right to enjoin such trespass on his possession, and have such trespasser enjoined from keeping such excess in such pasture. As we construe such ruling, it is well supported by authority and reason, and as thus construed we follow it. We overrule defendant's first assignment.

What has been said likewise disposes of defendant's assignments enumerated above as defendant's assignments of error Nos. 2, 3, 4, and 7, and they are accordingly overruled. In support of his assignment No. 5, defendant urges the general principle that a party seeking equitable relief must come into court with clean hands, and contends that the evidence elicited from Mrs. Stringfellow, that she had no consent from the owners over which the fence was reconstructed after it had been destroyed by the 1934 tidal wave, proved that she and her husband, because it is made a misdemeanor by art. 1351 of Penal Code of 1925

1018

to make a fence on or around the land of another without permission were disabled to seek the injunction in question. This point was not raised by pleading, and is not raised on appeal in such form that we are able to see the applicability of the principle in the present instance. Plaintiffs are not seeking to enforce some illegal act through the aid of the court, nor seeking through the aid of the court to be relieved from the consequences of having performed some illegal act. Had the point been put in issue by some pleading to the effect that the fence in question was erected unlawfully and was further connected up in some way so as to show that the granting of the injunction would have promoted unlawful conduct, this could have become an issue in the case which plaintiffs would have had to meet. In such case, for aught we know, they might then have pled and proved that the fence had been standing for 35 years, and that they and their predecessor in interest had acquired a prescriptive right to maintain such fence so that when it was destroyed by the tidal wave of 1934—an act of God—they had the right to replace it. But as the point was not in issue, we are unable to say whether plaintiffs could justify their conduct or not. As the matter stands before us, we overrule the assignment. Defendant's sixth assignment of error in effect complains that the following finding of fact did not go further, namely: "That since the institution of this suit, the defendant * * * has acquired leases and conveyances, purporting to lease and convey to him 125 additional acres of land, but no evidence was offered or adduced upon said hearing showing or tending to show that the parties conveying and leasing said land to said defendant had any right or title thereto or therein."

True, the court might have inferred from such conveyances and leases, that they had been executed by the true owners of the tracts purporting to be conveyed or leased thereby. East Side Realty Co. v. Fowler, Tex.Civ.App., 202 S.W. 999. But defendant has cited no authority which required the trial court to so find, and we know of none.

Finding no reversible error in the record, we overrule the assignments of error, and affirm the judgment.

Affirmed.

PLEASANTS, C. J., absent.