**SEABROOK SHIPYARD, Appellant,**

v.

**William K. LEHRER, Appellee.**

No. 15769.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 21, 1956.

Rehearing Denied Jan. 18, 1957.

Hutcheson, Taliaferro & Hutcheson, J. Philip Wandel and Thad T. Hutcheson, Houston, for appellant.

Vinson, Elkins, Weems & Searls, and Robert E. Morse, Jr., Houston, for appellee.

RENFRO, Justice.

The appellant, Seabrook Shipyard, sued William K. Lehrer to recover the remaining amount due under a contract for the construction of a boat. The defendant Lehrer answered the boat was not constructed in accordance with warranties, representations, agreements, plans and specifications, and filed a cross-action seeking return of the down payment theretofore made by him to plaintiff.

After trial before the court without a jury, judgment was rendered against plaintiff on its cause of action and for defendant on his cross-action.

Findings of fact and conclusions of law were filed by the court. Plaintiff duly filed exceptions thereto.

The court filed thirty findings of fact which may be summarized as follows:

"Plaintiff agreed to build and deliver to defendant a tunnel stern fishing launch of

17' overall length, 16' 7" water line length, 5' 5" beam and 6" draft." Plaintiff represented to defendant a boat built in accordance with plans it had obtained would have a draft of 6 inches. Plaintiff warranted to defendant the boat would have a draft not in excess of 6 inches. Defendant paid $662.50 of the contract price for plaintiff's agreement to build a boat with a 6 inch draft or not in excess of 6 inches. Defendant relied on plaintiff's representation the boat would have draft not in excess of 6 inches, and under the circumstances existing defendant was justified in relying on such representation. The boat built by plaintiff had a draft in excess of 12 inches. The basic essence of the agreement between plaintiff and defendant was for the construction of a boat with a draft not in excess of 6 inches. Plaintiff failed to deliver such a boat. The boat built by plaintiff was worthless to defendant.

The court concluded that defendant's agreement to pay plaintiff $2,650 for construction of a boat was based on plaintiff's representation, justifiably relied on by defendant, that the boat would have a draft not in excess of 6 inches, that a boat built in accordance with the dimensions shown on the plans obtained by plaintiff would have a 6 inch draft; that the representations were not true; that the express and implied warranties of plaintiff to build a boat with a draft not in excess of 6 inches have been breached, and defendant is relieved of any obligation to pay for said boat; that the consideration has wholly failed.

The plaintiff by appropriate points of error attacks the findings as being without support or against the overwhelming weight and preponderance of the evidence. It is plaintiff's contention it agreed to build a shallow fishing launch according to certain plans and specifications without representation, guaranty or warranty as to the draft of said boat.

There are few, if any, real contradictions in the evidence.

Viewed in the light most favorable to support the judgment the evidence shows:

Defendant first talked to Smith, General Manager of Seabrook, in February, 1954. He told Smith he wanted a boat with as shallow draft as he could get, he wanted it for fishing in very shallow water and shallow draft was the main consideration. Smith assured defendant he could build such a boat. They discussed boat plans. Smith knew where he could get plans, offered to, and did, procure a set of plans. Defendant stressed to Smith that his primary object was to get a shallow draft, and his only reason for getting a specially built boat was to obtain a shallow draft. Defendant had no special knowledge of boats. Plaintiff was in the business of building, repairing and selling boats. Defendant went to plaintiff because he had confidence in the firm. On February 18, plaintiff, through Smith, wrote defendant, "I am forwarding herewith a copy of letter and a set of plans * * * which seems to be very close to what you have in mind." The enclosed letter was addressed to Smith, signed by the Associate Editor of Motor Boating magazine. It read in part, referring to designs for a boat, "Its draft is a matter of about six inches. It comes very close to what you specify." The plans or design sent along to Smith, and sent by Smith to defendant, consisted of four pages and on each page the draft of the proposed boat was shown as 6 inches.

After a telephone conversation between defendant and Smith, the latter, on March 9, 1954, wrote defendant, "In accordance with our discussion of last week we have gone over in detail the plans of 'Heron', the 17' x 16' 7" x 5' 5" x 0' 6" tunnel stern fishing launch designed by William Atkin." The 6" set out above is the draft of the boat. The letter discussed details of building the boat and the cost to defendant. On March 25, defendant, by telephone, accepted the offer made by plaintiff in the letter of March 9, and confirmed same by letter of March 26. From the beginning of the negotiations defendant stressed the fact

to Smith that he wanted a minimum shallow draft. There is evidence in the record that the minimum shallow draft for the kind of boat defendant wanted is 6 inches. Defendant testified the plans showed 6 inch draft and he "told them" (plaintiff) that was satisfactory. When the boat was completed defendant paid the remaining purchase price by check but stopped payment on the check after testing the boat. The boat actually had a draft of 14 inches. When defendant tried it out in shallow water it ran aground. He was looking for a 6 inch draft and as soon as he discovered it had draft of 14 inches he objected. As constructed, the boat is of no use to him. It does not and cannot meet the purpose of being a shallow draft vessel as he desired. Defendant returned the boat to plaintiff immediately and it is still in plaintiff's possession.

Smith, General Manager for plaintiff, and called as a witness by plaintiff, confirmed defendant's testimony that defendant wanted a boat of minimum draft for use in shallow water, and witness knew all along defendant's principal object was to get a boat with a very shallow draft; that defendant was anxious to get as shallow draft as possible; that in witness' opinion 6 inches would be very shallow and a minimum; that the overall effect of the plans transmitted to defendant was to design and construct a boat that has " * * a 17-foot overall length, 5½-foot breadth, 16-foot 7-inch length at the water line and a 6-inch draft." Witness agreed the boat as completed had a draft in excess of 12 inches. It is unusual for a draft to vary more than two or three per cent from the designer's calculating draft. Witness knew of no conceivable way of decreasing the draft of the boat more than a quarter of an inch. The concluding testimony of the witness, in answer to questions as to the draft wanted by defendant, was, "Well the whole thinking on that question goes back to the plans which showed six inches. He'd

certainly indicated that that would be acceptable."

A finding will be sustained in the appellate court if there is any substantial legal evidence upon which a trier of the facts might base it. Bussan v. Donald, Tex.Civ.App., 244 S.W.2d 271; 41-B Tex. Jur., p. 865, sec. 625. Fact findings may embody inferences deducible from the evidence.

The findings of the trial court in a nonjury case are to be interpreted in the light of the pleadings and proof in the case, and so as, if possible, to sustain the judgment rendered. Daniels v. Wight, Tex. Com.App., 249 S.W. 454; Elder, Dempster & Co. v. Weld-Neville Cotton Co., Tex. Com.App., 231 S.W. 102.

An appellate court will not disturb the fact findings of the trial court if there is some evidence of probative force to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. Googins v. E. W. Hable & Sons, Tex.Civ.App., 237 S.W. 2d 705.

Viewed in the light of the above rules, it is our opinion the evidence is sufficient to support the findings of the trial court and the judgment based thereon.

In other points plaintiff contends the court erred in permitting rescission of the contract, that the proper remedy would have been damages defendant sustained.

In the light of the pleadings, the findings of fact and the evidence as a whole, it is our opinion a proper measure of damages was allowed.

All points of error briefed by plaintiff have been examined and, finding no reversible error therein, they are overruled.

The judgment of the trial court is affirmed.