**WEHRLY et al. v. HUMBLE OIL & REFINING CO. et al.**

**No. 9678.**

Court of Civil Appeals of Texas. Galveston.

June 2, 1933.

Rehearing Denied Oct. 19, 1933.

A. E. Masterson, of Angleton, Oliver J. Todd, of Beaumont, and W. T. Williams and W. T. Williams, Jr., both of Austin, for appellants.

G. P. Dougherty, J. E. Price, and Pleasant F. Graves, all of Houston, Thompson, Mitchell, Thompson & Young and Cyrus S. Gentry, all of St. Louis, Mo., and A. R. Rucks, of Angleton, for appellees.

PLEASANTS, Chief Justice.

This is a suit by appellants against appellees to recover the title and possession of land in Brazoria county described in the petition as "the R. L. Weir Survey" of 113 acres, more or less, and more fully described by metes and bounds set out in the petition.

In addition to the usual statutory allegations in a suit of trespass to try title, the petition pleads title in plaintiffs under the three, five, and ten year statutes of limitation.

The defendants named in the petition are: The Humble Oil & Refining Company, hereinafter designated Humble Company, the Shell Petroleum Corporation, hereinafter designated Shell Corporation, T. B. Winston, Mrs. Kate Winston (a feme sole), Mrs. Nettie Laura Farber (a feme sole), Bassett Blakely, and J. E. Meek, Jr.

The defendants Bassett Blakely, Mrs. Winston, Mrs. Farber, and Blakely S. Winston answered by general demurrer, general denial, and plea of not guilty. They also pleaded title in themselves to a portion of the land described in plaintiffs' petition under a regular chain of title from the state of Texas, and further pleaded title as innocent purchasers, and title under the one-year statute of limitation as purchasers under a patent issued to them by the state of Texas. They also pleaded title under the three, five, ten, and twenty-five year statutes of limitation.

By cross-action against plaintiffs these defendants sought to recover the title and possession of the land described in their answer.

The defendant Humble Company, and each of the other named defendants, answered by similar exceptions and pleas to those contained in the answer of Bassett Blakely and others above stated, and each by cross-action sought recovery from plaintiffs of the title and possession of the portions of the land claimed by them respectively.

At the request of opposing parties, plaintiffs and defendants filed abstracts of the title relied on by them respectively. The abstract filed by plaintiffs contains the following statement of the title relied on by them:

"1. Copy of a certificate for 320 acres of land issued to R. L. Weir December 1st, 1852.

"2. Field notes of the 113 acre survey involved in this suit dated April 22nd, 1854, and duly recorded in the County Surveyor's Office, and duly returned to the Land Office.

"3. Field notes of two other surveys made by virtue of the same certificate about the same time, and the patents thereon.

"4. Patent to R. L. Weir for the 113 acre survey as established by records of the Land Office.

"5. Lost deed from Weir to Wehrly.

"6. Lost deed from R. L. Weir to Peter Seibel.

"7. Mesne conveyances from R. L. Weir to John Wehrly which was lost and never recorded.

"8. Prior possession.

"9. Limitation of three, five and ten years.

"10. Judgment dated October 31st, 1867, condemning the land to be sold for taxes and certificate of purchase from the assessor and collector to Peter Seibel and lost deed to Seibel.

"11. Deeds from Peter Seibel to Wehrly.

"12. Payment of taxes by Seibel and Wehrly from 1870 to 1903."

The defendants thereupon filed an abstract of the title on which they relied, as follows:

"1. Proof of ownership of the H. T. & B. certificate on which their survey was based.

"2. Field notes of surveys made April 22nd, 1861, and on April ——, 1862, and corrected field notes made August 24th, 1888, on which patents issued.

"3. Patents dated 1893 and 1895, respectively, and chain of title connecting them with said patents."

The evidence shows:

1. That unconditional certificate No. 153 for 320 acres of land was issued to R. L. Weir, December 1, 1853, in lieu of conditional certificate No. 150.

2. That said certificate was located and surveyed in Brazoria county in three tracts, namely:

On December 19, 1853, a tract of 177 acres was surveyed for E. Thomas.

On March 24, 1854, a tract of 30 acres, and on April 22, 1854, the 113-acre tract involved here, were surveyed for R. L. Weir, thereby exhausting the 320-acre certificate. The three surveys were given abstract Nos. 204, 205, and 206, the 113 acres being No. 205.

3. The Weir certificate was filed in the land office May 1, 1854, with three sets of field notes—177 acres, 113 acres, and 30 acres, respectively, with signature of clerk wanting and returned to the surveyor for correction on May 1st—year not shown. The field notes of 177 and 30 acre surveys were returned and refiled April 8, 1858, signed by clerk.

4. That patents covering the 177-acre and 30-acre tracts dated April 22, 1858, were issued and recorded in Brazoria county, although the county surveyor's records contained the notations that these surveys had been "lifted."

5. That the 113-acre survey involved in this suit was delineated on the original land office map of Brazoria county with no date, and on the maps of 1863, 1873, 1879, and 1883 showing its location where it is now claimed by plaintiffs.

The field notes of the 113-acre survey were found to be missing from the land office files containing the three sets of field notes, in 1883, as shown by indorsement on the wrapper of the land office file September 12, 1883.

6. The map of 1879 was made pursuant to an act of the Legislature directing the land commissioner to make county maps showing all titled and patented lands in the counties, and the 113-acre survey involved here was shown in Brazoria county with no conflicting surveys.

7. The Legislature in January, 1860, directed the land commissioner to compile from the records of the general land office an abstract of titled and patented lands embracing all the lands in the state titled and patented prior to the 1st day of December, 1859, and furnish same to the comptroller for distribution among the tax officials of the state, and the three R. L. Weir surveys, including the 113-acre survey involved in this suit, appeared in this list.

8. The only record in the land office, other than the maps and abstract before mentioned, tending to show that the 113-acre survey involved in this suit was patented, is the appearance of the letters Ptd. on each of the original applications for patents for the three surveys.

9. That no other land was ever appropriated by the Weir certificate and the records of the land office, except as hereinafter stated, do not show that the certificate was ever "lifted" or "floated" from any of the three surveys in Brazoria county. No certificate for any unlocated balance of the land is shown to have been issued by the land office.

10. That E. Thomas lived on his 177-acre Weir survey, and his son, E. B. Thomas, with his wife, Mollie, lived on the 177 acres, and that Mrs. Mollie Thomas paid taxes on the survey for E. Thomas from 1886 to 1922, and this and the 30-acre survey are still carried on the tax rolls.

11. That the 113-acre survey involved in this suit was condemned by the county court of Brazoria county in October, 1867, to be sold for taxes, both county and state, for the year 1867, and that same was sold to Peter Seibel, whose title plaintiffs and their ancestors have owned ever since 1879.

12. The statement of facts contains the following agreement: "It is agreed by and between the parties hereto that about the year 1880, under the direction of the Commissioner of the General Land Office, a rearrangement and re-numbering of the surveys of land in Brazoria County was made, and the numbers of all the surveys changed, and their arrangement made alphabetically; that Mr. Rees P. Sweeny re-numbered the surveys in Brazoria County, and that under this re-arrangement, original Abstract No. 205, R. L. Weir 177.7 acre tract was changed to Abstract No. 391, and the 30 acre tract changed to Abstract No. 392 at the same time."

13. Peter Seibel paid taxes on 113 acres, R. L. Weir survey, abstract No. 205, from 1869 to 1879, inclusive, and John Wehrly paid taxes on 113 acres, abstract No. 391, R. L. Weir, for each year from 1881 to 1903, inclusive. The land was long known in the community as a part of the Wehrly place.

14. The facts show that the assessor failed to assess the 113-acre Weir survey as the property of Mr. Wehrly in 1881, and "the old gentleman" got belligerent about it and said his land was on Austin Bayou, and for many years thereafter rendered and paid taxes on 113 acres, abstract No. 391.

The foregoing statement of the pleadings and evidence is, in the main, copied from appellants' brief.

There is evidence showing that Wehrly had possession of a portion of the land in controversy claiming title thereto under the Weir certificate and the location made thereunder for more than three years subsequent to the location of H. & T. B. Railway certificate thereon and the return to the land office of said certificate and field notes of the location, and that Wehrly and those who succeeded to his title have never ceased to claim the land.

Conditional certificate No. 150 was originally issued to R. L. Weir (a single man over seventeen years of age at the time of Texas Independence) in the year 1838 by the board of land commissioners of Brazoria county, Tex. The board approved his unconditional certificate No. 150 for 320 acres of land on the 1st day of December, 1853, and the Court of Claims approved the certificate for the 320 acres of land on the 13th day of April, 1853. One hundred and thirteen acres of land under this certificate were located on Austin Bayou on or prior to the 1st day of December, 1853, because on that date, as shown by the R. L. Weir certificate, file 24 in the general land office, R. L. Weir made oath before Thos. G. Masterson, county clerk of Brazoria county, Tex., that said certificate "was placed in the hands of a surveyor for location," etc. The original application made by Weir for the survey showing the location being either lost or destroyed, the above is the only evidence available of the date of location. This location was surveyed on April 22, 1854, by R. G. Mills, district surveyor for the Brazoria district. (It being stipulated in the trial of this cause that R. G. Mills was at that time the duly qualified and acting surveyor of the Brazoria district.)

There is on the records of Brazoria county a deed dated February 22, 1854, filed for record on the 22d day of March, 1854, and recorded on the 23d day of March, 1854, in Book "F," on pages 715 and 716 of the Deed Records of Brazoria county, Tex., by which Weir sold and conveyed to Mills the above-mentioned certificate and all his right, title, and interest in and to any and all lands that may be secured by virtue of said certificate.

Neither Weir nor his vendee, Mills, to whom he sold the certificate, have paid any taxes on the land or exercised any dominion thereover for more than fifty years.

No part of the land involved in this suit was ever fenced or occupied by the defendants separately, the only use and occupation by them being as a part of a large inclosure.

The H. T. & B. Railway certificate under which appellees' claim was surveyed "over and upon" the S. A. Towsey and R. L. Weir surveys on April 22, 1861, but the field notes of that survey were never returned to the land office.

Said certificate was again surveyed "over and upon" the S. A. Towsey and R. L. Weir surveys in April, 1862, and that set of field notes was filed in the land office July 10, 1862, and bear the indorsement "cancelled by resurvey."

In April, 1868, the H. T. & B. certificate was lifted and floated from its straddle of the Towsey (now patented) and the Weir surveys, and sections 15 and 16 to the east of the Towsey and Weir were surveyed by virtue of the certificate, and these field notes were filed in the land office on April 30, 1868, and the certificate rested there until August 24, 1888. It was then (in 1888) surveyed clear of the Towsey, but again placed astride the Weir and the conflict noted on the file in the land office.

The lands embraced in the survey of the H. T. & B. certificate were covered by three patents issued in 1879, 1893, and 1895, respectively, and defendants by mesne conveyances hold all the title of these patentees to the land in controversy. Sections 13 and 14 of the H. T. & B. surveys were leased and continuously used by lessees of those holding title under the H. T. & B. patents for pasturage and cutting hay thereon from 1913 to 1924. The land was fenced by the lessors, and, while the evidence is conflicting as to whether the fence was kept in good condition during all of this time, the uncontradicted evidence shows that the fence was kept in good condition from 1913 to 1917. The fence was put in good shape in 1926, and the lessors have held possession continuously since that time. Defendants and those under whom they claim have paid taxes on the land continuously since 1913.

We believe the foregoing statement contains all the material facts shown by the evidence.

After the evidence had all been introduced, the trial court instructed the jury that had been impaneled to hear and determine the fact issues to return a verdict in favor of the defendants, and upon the return of such verdict rendered judgment in accordance therewith.

Appellants' brief presents twenty-eight propositions upon which they rely for a reversal of the judgment. We shall not undertake to discuss all these propositions, since, in our opinion, the judgment of the trial court must be affirmed upon several grounds, regardless of the abstract soundness of many of the propositions presented in the brief.

■ We are of opinion that the evidence conclusively shows that the survey of the 113 acres under the Weir certificate, if not invalidated by the evidence introduced by the defendants showing a conveyance of the certificate and the land located thereunder to the district surveyor who made the location and survey, was abandoned by the owners of

the certificate long prior to the survey under the H. T. & B. certificate upon which patents were issued, and that the title to the land vested in the patentees under the H. T. & B. certificate.

There is no evidence that the field notes of the 113 acres were returned to the land office after they were sent to the surveyor for correction on May 1, 1854, until 1875, when they were returned by the claimants under the tax sale to Seibel.

The field notes of each of the three surveys located under the Weir certificate had the notation thereon: "Lifted May 25, 1855, George W. Durant, D.S.B.D." Durant was the district surveyor for the Brazoria district at that time. The file wrapper on the 113-acre survey has a notation thereon that the 177-acre survey and the survey for 30 acres were correct for patenting. These two surveys were patented in 1858. The field notes of surveys Nos. 13 and 14, which were located under the H. T. & B. certificate, were first sent to the land office in 1862, and the only evidence shown to be in the land office at that time of the location of the 113-acre survey was its delineation on the land office map. The only subsequent reference to the field notes of the 113-acre survey shown by any record of the land office was the notation, before mentioned, on the wrapper of the file of the three Weir surveys in 1883, that the field notes of the 113-acre survey were missing. At the time this notation was made the Sarah Lagrone survey was located in conflict with surveys Nos. 13 and 14, and it is reasonable to infer that the notation was made by the clerk investigating this conflict.

The abstract book compiled by the land office in 1872 omits the Weir 113-acre tract from the list of titled and patented lands. As before shown, the only record in the land office other than the old maps claimed by appellants to indicate that the 113-acre Weir survey was patented are the letters Ptd. found on the original application for patents for each of the three Weir surveys. It is inconceivable to us that a patent could be executed and no record thereof kept in the land office other than the letters Ptd. on the application for a patent. Mr. Walker, the land commissioner, who was long familiar with records and methods of the office, testified that as he read these letters they were "Pyd.," and only meant that all charges in connection with the application had been paid.

He further testified that there was no record in the land office showing that any patent to this 113 acres was ever issued.

It seems clear to us that upon this state of the evidence reasonable minds cannot differ in the conclusion that the owner of the Weir certificate abandoned the location of the 113-acre tract, and the trial court was not, therefore, required to submit such issue to the jury.

The Act of 1871 (Acts 1871, 2d Sess., c. 57, § 3) provides: "That in all cases when the field notes of surveys of land heretofore made have been from any cause withdrawn from the General Land Office, the same shall be returned to said office within twelve months after the passage of this Act, or such survey or surveys shall be null and void. And in all cases when the field notes shall hereafter be withdrawn from the General Land Office, the same shall be returned thereto within twelve months from the date of withdrawal, or such survey or surveys shall be null and void." Snider v. International & G. N. R. Co., 52 Tex. 306; Atkinson v. Ward, 61 Tex. 383.

In the case last cited our Supreme Court says:

"The burden was clearly upon the defendants to negative, if they could, the inference that arises under the facts that Spence and McGill withdrew the field notes under the authority and with the consent of the defendants or of their grantors. The circumstances, so far as they are developed by the evidence, are consistent with that supposition, and there is no evidence which suggests the idea that the withdrawal was effected by unauthorized persons, or for purposes inimical or adverse to the interests of the defendants; and if such were true, the onus was upon the defendants to show that fact, if, indeed, such unauthorized act by a stranger would have the effect to protect the land from location by another, long after the expiration of the twelve months limited by the law for the return of the field notes. * * *

"We would at least hesitate to intimate an opinion that even a party thus innocent and unfortunately circumstanced, by a transaction in which blame did not attach to him by occasion of such disappearance of the evidence of his right from the proper place of its repository, could safely repose in security without using reasonable diligence to follow up his incipient title with due application to the general land office for the issuance of his patent; and failing to do so, that after the lapse of a reasonable period of time, he would not be preferred in right as against another who in good faith, and without notice, should have located upon land which was apparently vacated by a prior locator."

See, also, Winsor v. O'Connor, 69 Tex. 571, 8 S. W. 519.

It is true that in the instant case the certificate was returned, presumably by the land office, to the district surveyor at Brazoria, for correction of the record, and, if the officer to whom it was returned had failed to comply with his duty to make the correction and return the certificate and field notes within the required time, the rights of the owner of the certificate who was ignorant of the failure of the officer to perform his duty in that respect would not be affected thereby. But the facts here further show

that the owner of the certificate went to the office of the district surveyor and "lifted" the certificate from its location on the 113-acre survey, and that the certificate and field notes were not returned to the land office until 1895, more than fifty years after they were sent back to the district surveyor for correction, and no patent was ever issued on this Weir certificate and location.

In this state of the evidence, we think the owners of the Weir certificate should be held as a matter of law to have abandoned their location of the 113-acre tract and to have lost the rights incident thereto, and the subsequent location and patenting of the land under the H. T. & B. certificate placed the title in the patentees and those who hold under them.

■ Appellants failed to show any right of recovery on the claim of prior possession, or their plea of title under the three-year statute of limitation. Our conclusion that the title to the land in controversy is held by defendants by the location made under the H. T. & B. certificate and the patents issued thereon in itself defeats appellants' claim of the right of recovery on the ground of prior possession. If, however, the superior title had remained in Weir or Mills, appellants' claim of prior possession would not entitle them to recover the land, there having been no forcible or fraudulent ouster of appellants by the appellees.

■■ The presumption of title arising from possession of property ceases when the title is shown to be in another. A mere trespasser upon land can defeat a suit for its recovery by a plaintiff whose claim is based solely on prior possession, by showing an outstanding title in a third party. Watkins v. Smith, 91 Tex. 589, 45 S. W. 560; Bates v. Bacon, 66 Tex. 348, 1 S. W. 256; Sweeten v. Taylor (Tex. Civ. App.) 184 S. W. 693.

Appellants in this case failed to connect their title to the right or title acquired by Weir through his location on the 113-acre survey in controversy.

■ In their abstract of the title relied on by them, filed on the request of appellees, they list a lost deed from Weir to Wehrly, and a lost deed from Weir to Peter Seibel, but no evidence sufficient to raise that issue was adduced. They do not mention in their abstract a lost deed from Mills, but, if they had, we do not think the evidence raises that issue. It is clear from the record that the Weir certificate was "lifted" or "floated" from its location on the 113-acre survey in 1855, and thereafter neither Weir nor Mills had any further claim on or interest in that location, and their failure to dispute the claim of Wehrly, if they knew of or were charged with knowledge of Wehrly's possession and claim, which is not shown by the evidence, would not raise the issue of a lost deed by either of them to Seibel or Wehrly.

■ It is, we think, also clear that this evidence fails to show that appellants were in possession and claiming the land under color of title, in the purview of our statute of limitation of three years, and there is no evidence of such possession of the land for a longer period as would entitle them to prescribe under any of the statutes of limitation.

■ Peter Seibel, who conveyed the land to Wehrly, had no deed to the land, but only a certificate of purchase issued by the tax collector of Brazoria county on November 10, 1867. The statute under which the tax sale was made (Paschal's Digest, art. 7502) provides that "the mere possession of certificate of purchase shall convey no rights of ownership over the property thus acquired, and any trespass committed on such property, prior to the execution of the deed therefor, shall subject the trespasser to all the punishment incurred thereby."

This statute further provides: Should the Assessor and Collector find requirements have been complied with, upon the payment of $2.00 shall "issue a deed therefor, on the blanks furnished for that purpose, which, when recorded, shall have all the force and effect of a deed in fee simple, and shall not be set aside on the plea of want of power in the tax officer in making the sale, * * * but shall be regarded as prima facie evidence that all the requirements of this act have been duly fulfilled."

It cannot be doubted, in view of this statute, that this certificate of purchase passed no title to the land, and that one holding possession thereunder was not holding under title or color of title.

As before stated, we deem it unnecessary to pass upon other propositions presented in appellants' brief. The conclusions upon the question we have above discussed and decided require an affirmance of the judgment, and it has been so ordered.

Affirmed.