**E. M. LAND, Petitioner,**

v.

**W. R. TURNER, Respondent.**

**No. A–9799.**

Supreme Court of Texas.

Feb. 19, 1964.

182

Adams & Granberry, Crockett, for peti-
tioner.

J. B. Sallas, Crockett, for respondent.

GREENHILL, Justice.

W. R. Turner instituted this suit against
E. M. Land in trespass to try title. Trial
was to a jury which found that Land had·

not had 5 or 10 years' adverse possession of the property. No jury issue was given or requested as to prior possession, but judgment was entered for Turner on the basis of his prior possession. That judgment was affirmed by the Waco Court of Civil Appeals. 369 S.W.2d 716. The main questions here are whether Turner had prior possession; whether his possession was sufficient to entitle him to judgment; whether the possession, if had, was not abandoned; and whether, assuming issues of fact existed on these questions, the burden was upon Turner to obtain fact findings thereon.

Turner's petition described 340 acres of land, but Land in open court disclaimed as to all but 44 acres.

All of the land in question had belonged to R. C. Stokes. It was in the J. M. Love Survey, Houston County, some five to seven miles west of Crockett, Texas. In September of 1913, R. C. Stokes executed a deed to Dr. E. B. Stokes. The deed conveyed 140 acres of land and included the 44 acres here in question. Dr. Stokes thereafter died. His widow, in 1948, executed a deed to 93.6 acres to the defendant E. M. Land. The property conveyed to Land was in the same survey but was immediately to the south of the 44 acres here in question. The deed from Mrs. Stokes to Land did not include the 44 acres. Land also purchased from Mrs. Stokes other realty immediately to the west of the 44 acres.

In November of 1913, after the deed from R. C. Stokes to Dr. E. B Stokes which conveyed the 44 acres to Dr. E. B. Stokes, R. C. Stokes executed a deed to 180 acres in the J. M. Love Survey to the plaintiff Turner. The 44 acres was included within the 180 acres which Stokes conveyed, or purported to convey, to Turner. The 44 acres involved is the southernmost part of the 180-acre conveyance from Stokes to Turner, and the 44 acres was adjacent to land owned by E. M. Land immediately to the south and west. The plaintiff Turner also owned land to the north of the 180-acre tract.

To recover in trespass to try title, the plaintiff must recover upon the strength of his own title. Hejl v. Wirth, 161 Tex. 609, 343 S.W.2d 226 (1961). He may recover by (1) proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession, and that the possession had not been abandoned. Prior possession has other ramifications, but we are here dealing with alleged possession by Turner under a deed (though the deed was ineffectual as a conveyance as to the 44 acres), and a trespasser, Land.

It is apparent, at the outset, that under the proof made in this case, the record title to the 44 acres in question is in the heirs of Dr. E. B. Stokes. R. C. Stokes had already conveyed the 44 acres to E. B. Stokes when he executed the conveyance to the plaintiff Turner. And the grant from the widow of E. B. Stokes to the defendant Land did not convey the 44 acres.

The plaintiff Turner did prove a common source of title in R. C. Stokes. And he made a prima facie case when he, as plaintiff, first introduced the deed from the common source to himself of land which included the 44 acres. But this prima facie case was refuted upon the introduction of the prior conveyance of the 44 acres to Dr. E. B. Stokes.

So Turner failed to prove a regular chain of conveyances from the sovereign, he failed to prove a superior title out of a common source, and he neither pleaded nor proved title by limitation. It therefore became his burden to prove prior possession.

Because the courts below have sustained Turner's claim on the basis of prior possession, the evidence is here set out rather fully. For purposes of this opinion, we shall treat Turner's evidence of possession of the 180-acre tract which was deeded to him and which included these south 44 acres as evidence of possession of the land in question. The defendant Land had no knowledge of

the occupancy, if any, of the land until late in 1948. The plaintiff W. R. Turner did not testify on account of the infirmities of his advanced age. His sons did testify as well as the County Surveyor and others.

It is conceded that the land was rural and uncleared. Turner never claimed to have lived upon it. Nor did he claim to have used it for farming or as a pasture for cattle. His contention is that he used it primarily for the purpose of growing timber. He proved that he had paid the taxes upon the land, including the 44 acres, from 1919 through 1961.

Rufus Turner, plaintiff's son, testified that the family moved to the Wesley Chapel community, in which the land is situated in 1913, the year of the conveyance from R. C. Stokes to the plaintiff W. R. Turner. The Turner family resided on nearby land in the E. Gossett Survey, but not on this tract. The family moved away from the Wesley Chapel community in 1919 to the nearby town of Crockett, Texas. The family planted a small garden on the 44 acres in question. But when the garden was planted, and how long it was maintained, was not shown. Since the family moved away in 1919, it is presumed, in the light of the testimony, that it was not continued after that time. This son, Rufus, left Crockett and lived at Lufkin and Bryan, Texas. He moved to Pasadena, Texas, in August of 1941, and continued to reside there. He could not remember being on the land between 1941 and 1960.

He testified that his father built a sawmill on the 180 acres and that he, the son, worked at it. On cross examination, however, he located the site of the mill on a map or plat at a point near but not upon the 180-acre tract. Later the mill was relocated "right in this area here" (referring to a place on a plat), "due south of the point C." Point C is, on the map used upon the trial, in the west boundary line of the 180-acre tract. At another place he said, "The sawmill was over here. The sawmill had been removed from the 180-acre tract."

As to the time of the operation of the sawmill, he said it was operated "about 1922 or 1923"; that it was erected about 1920 and removed in 1922 or 1923. Mr. Reynolds bought the mill about 1932 or '33: "He didn't move it on our tract, he moved it on the adjoining tract." The plaintiff Turner sold the timber from the 180-acre tract to Reynolds, and Reynolds cut it in 1932 or 1933. Turner also sold timber to A. E. Hurley, who formerly operated a sawmill "in this area," and Hurley cut the timber in 1940.

The younger son, W. A. Turner, went off to college and graduated in 1937. He was also away from the Crockett area from 1937 to 1951 when he returned to Crockett. Between 1951 and 1960, he was on the 180 acres only three or four times. On those occasions, he had taken his father out to look at the land; and they walked over it except for the extreme south portion (where the 44 acres are located). He particularly remembered going out once after a hard freeze to inspect for any timber damage. He testified about some fences. That testimony will be noted below.

Mr. Stanley Minns, a local surveyor, testified that he surveyed the land in 1960 for the plaintiff Turner. He prepared the map or plat which was used during the trial. He described the land as being "very brushy throughout on all courses." The southern part [where the 44 acres were] was in particularly bad shape. Asked if the land was suitable for grazing, he said there were parts where cattle could get through; that generally "they could graze on it all right." There was a gravel pit on the 44 acres with small trees around it. There were pines, hickory and oaks.

Asked about the condition of the land and any improvements thereon, he said he mainly went around its boundaries while making the survey. He found one or two "clearings." Asked if there were any structures, he said he found an old syrup mill in the northwest corner. He did not go into the interior of the 44-acre tract, but said

there could not have been many large fields. In making his survey he saw no houses or barns.

There was a fence on the west side of the 180 acres, and a fence along a part of the eastern boundary. There was no fence on the northern boundary. He found evidence of an old fence on the northern boundary, but it was down. Except for some 30 to 60 feet at the southwest corner, there was no fence on the southern boundary, and he found no evidence of there having been one. There was an old fence, running generally east and west across the 180 acres. This was on, approximately, the northern boundary of the south 44 acres. This fence had been replaced by a new fence in the same area but on a different location. The new fence had been built by defendant Land.

W. A. Turner, the younger son, remembered the old fence on the north of the 44 acres, but testified that there was no fence on the south of it where it joined the defendant Land's property.

Raymond Cornelius, son-in-law of the E. B. Stokeses, testified that he helped negotiate the sale from Mrs. Stokes to Land in late 1948, and that he walked with Land to the western edge of the property and showed Land where Land's property was to the south and where the 180 acres were. He did not go into the land because it was pretty rough. He said he had helped the Stokeses manage their land, but he never remembered going into the 180-acre tract. He did not remember any garden on it. He remembered the timber sales. He had heard of the gravel pit, but had never gone to it. He thought an old dim lane led to it.

The plaintiff introduced evidence to support his *claim* to the 180 acres including the 44 acres in question. In addition to paying the taxes, he had mortgaged the 180 acres in 1930 and in 1938. He had executed oil and gas leases thereon in 1941 and in 1953. The mortgages, their releases, as well as the oil and gas leases, had been placed of record in Houston County.

The defendant Land testified that when he purchased his land in late 1948, it and the 44-acre tract were being used by one Johnson, a tenant of Mrs. Stokes, for grazing. Land purchased the property for grazing his cattle. When Land entered in January, 1949, the land he purchased was fenced; and the land fenced included the 44-acre tract. Apparently Land, according to his testimony, thought his land included the 44-acre tract. He thought he bought everything under fence. There was no fence between Land's 93.6 acres to the south and the 44 acres adjoining to the north. There was a fence at the northern end of the 44 acres, and Land built a new fence to hold his cattle. He kept the fences up all around his land. In all, Land purchased about 839 acres in the vicinity from Mrs. Stokes. The fence around the 839 acres encloses the 44-acre tract and did so at the time the land was conveyed to him by Mrs. Stokes, although the deed to Land did not include the 44 acres.

While there have been many opinions of this Court and the Courts of Civil Appeals on prior possession, there has not been, at least in modern times, an opinion by this Court on the nature and extent of the possession which is required to constitute prior possession. There are Courts of Civil Appeals' opinions which vary between the widest extremes. For example, in Street Realty Co. v. Brown, Tex.Civ.App., 291 S.W. 580 (1927, writ dism.), it was held that to support a judgment based on prior possession, the possession must be so clearly defined as to give the claimant exclusive dominion over the property, and that this actual and exclusive possession must have existed up until the very time of his actual dispossession. At the other extreme is Boyd v. Miller, 54 S.W. 411 (1899, writ refused), where plaintiff occupied the land for one year in 1852 but did not occupy the land from 1853 to the time of trial around 1900. It was held that the possession having been

once had, though not continued for over 40 years, would support a fact finding of prior possession. The basis for this is apparently a presumption of a continued status of possession in plaintiff.

The opinions of this Court in prior possession cases have not always set out the same tests for the requisite quality of possession necessary for prior possession. In many of the leading cases, there was such actual possession that no question appears to have been raised as to whether the possession was sufficient. House v. Reavis, 89 Tex. 626, 35 S.W. 1063 (1896); Alexander v. Gilliam, 39 Tex. 227 (1873). In an early case where the Court held that there had not been "prior possession," it was stated that the fact of prior actual possession "must be clearly and unequivocally proved." Lea v. Hernandez, 10 Tex. 137 (1853). In Wilson v. Palmer, 18 Tex. 592 (1857), and in Parker v. Fort Worth & D. C. Ry. Co., 71 Tex. 132, 8 S.W. 541 (1888), it was said that the actual possession must be continuous, or at least not abandoned. In Duren v. Strong, 53 Tex. 379 (1880), it was held that "the plaintiff having clearly established a prior peaceable possession never abandoned, and the defendants having failed to show any right to disturb that possession, the judgment in favor of plaintiff should stand." 53 Tex. at 382. Where the petitioner and his predecessors "had actual, continuous, and exclusive possession of the land for more than 30 years, and the evidence leaves no doubt as to the fact of actual possession," it was held that the claim of prior possession should be sustained. Bruni v. Vidaurri, 140 Tex. 138 at 162, 166 S.W.2d 81 at 162–163 (1942). In Pacific Express Co. v. Dunn, 81 Tex. 85, 16 S.W. 792 (1891), this Court said, " * * * an exclusive and peaceable possession of land furnishes *prima facie* evidence of ownership, which, if not rebutted, is sufficient * * * against a trespasser or mere intruder." 81 Tex. at 86, 16 S.W. at 792. In Conn v. Franklin by the Texas Commission of Appeals, 19 S.W. 126 (1892) it was said, "In order to enable the plaintiff to recover

on the strength of his possession alone, it [the possession] should be actual and corporeal, not merely a constructive possession," citing Lea v. Hernandez, supra. Similarly, in Humble Oil & Refining Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (1934, writ refused), it was held that the later actual possession of plaintiffs would prevail over previous *claims* of possession by defendants and the previous occasional cutting of timber on the land by defendants.

In defining "possession," Tiffany says:
"We may say, however speaking generally, that one is in possession of land when he is in occupation thereof, with the intention, actually realized, of excluding occupation by others, or when, although not in actual occupation, he claims the right of exclusive occupation, and no person is in occupation opposing his claim. The possession which involves actual occupation of land is conveniently termed 'actual' possession, and that not involving such occupation, 'constructive' possession." 1 Tiffany, Real Property, 3rd ed., § 20, p. 27.

■ From the foregoing, we conclude that the rule is that to establish "prior possession," there must be an actual possession of the property which is exclusive, and peaceable. The "actual" possession in Texas to support "prior possession" may be through tenants or agents. Duren v. Strong, 53 Tex. 379 (1880); Pacific Express Co. v. Dunn, 81 Tex. 85, 16 S.W. 792 (1891).

As indicated, it has been held in some cases that prior actual possession has been established as a matter of law. In other cases, it has been held that as a matter of law, there has not been "prior possession." For example, Conn v. Franklin, Tex.Comm. App., 19 S.W. 126 (1892), where plaintiff merely went on the land and made a crop one year; and Pettis v. Achille, Tex.Civ. App., 313 S.W.2d 348 (1958, no writ), where the "possessor" had fenced the property but had never occupied it.

In Humble Oil & Ref. Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (1934, writ

refused), there were two sets of "possessors." The defendants owned the adjoining land, and there was evidence that they claimed the land in dispute. On one or more occasions they had cut timber from it. In November, 1931, the plaintiffs went into actual possession. The plaintiffs were ousted by the defendants in December, 1931. It was held that since there had been no actual occupancy of the land until that of the plaintiffs, plaintiffs were entitled to an instructed verdict.

In many cases, it had been held that there was an issue of fact as to prior possession. Lockett v. Glenn, Tex.Sup.Ct., 65 S.W. 482 (1901), where possessor fenced the land and built a cabin on it; Teagarden v. Patten, 48 Tex.Civ.App. 571, 107 S.W. 909 (1908, writ refused), where possessor dug a well, built a house, cleared and cultivated part of the land, paid taxes, and sold timber off .the land; Griffin v. Mauritz, Tex.Civ.App., 308 S.W.2d 599 (1957, no writ), where possessor fenced the land and pastured cattle; and Lynn v. Burnett, 34 Tex.Civ.App. 335, 79 S.W. 64, (1904, no writ), where a large ranch fenced 240,000 acres, but left a "little three mile gap" in the fence, this area being patrolled by cowboys. Said the Court, "Such possession must, of course, be actual, and must be so clearly defined as to give the claimant the exclusive dominion over the property."

■ Once an actual possession of the land has been established, it must be continuous. But it may be continued by actual or constructive possession if there has been no abandonment of possession. This may be illustrated by Holman v. Herscher (Tex. Sup.Ct., opinion not officially reported), 16 S.W. 984 (1891), where the plaintiffs owned "The Iron Roof House." They had occupied it, but left town, leaving the house in the hands of an agent for rental. The house was locked when defendants broke in and occupied it. Though the house and land were not physically occupied when defendants entered, it was held as a matter of law

that there was constructive possession and no abandonment.

At the other extreme there are cases which hold that there has been an abandonment as a matter of law. In Conn v. Marshburn, Tex.Civ.App., 169 S.W. 1113 (1914, writ refused), .the possessor had moved on the land in 1855 and had built a house, had opened a small field and had cultivated it. He moved off before 1871, and the property was sold for taxes in 1881. No claim was manifested to the property until 1901. Similar is the holding of abandonment as a matter of law in Adels v. Joseph, Tex.Civ.App., 148 S.W. 1154 (1912, no writ), where there had been no possession for 22 years before suit; and Bartee v. W. T. Carter & Bros., Tex.Civ.App., 100 S.W.2d 378 (1936, writ dism.), where the claimant had been out of possession and had exerted no claim for 50 years.

In between these holdings, it has been held on other occasions that there was an issue of fact as to whether there had been an abandonment. Kolb v. Bankhead, 18 Tex. 228 (1856). These cases are summarized in Balli v. McManus, Tex.Civ.App., 311 S.W.2d 933 (1958, writ refused, n. r. e.). This Balli case, as well as Holman v. Herscher, above, holds that where there has been actual possession, it may be continued by constructive possession if there has been no abandonment; i. e., the actual possession need not be present when the opposing party enters if there has been no abandonment.

■■ One who does not prove that his possession was disturbed by another's entry has the burden to prove that he did not abandon his possession. This is the holding in the leading case of Sabariego v. Maverick, 124 U.S. 261, 8 S.Ct. 461, 31 L.Ed. 430 (1887), in which the U. S. Supreme Court ably interprets the Texas and the common law rule. Thus the rule is that if the plaintiff does not have actual possession when ousted, but claims constructive possession, he must show the facts amounting to a

constructive possession. If the land was apparently vacant when defendant entered, the plaintiff "must go further and show that his actual possession was not abandoned; otherwise he cannot be said to have had even a constructive possession." 124 U.S. at 298, 8 S.Ct. at 481, 31 L.Ed. 430. The Sabariego opinion is followed in Balli v. McManus, Tex.Civ.App., 311 S.W.2d 933 (1958, writ refused, n. r. e.).

■ Under the foregoing authorities, particularly Humble Oil & Ref. Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (1934, writ refused), we think it doubtful that Turner raised an issue of fact as to prior possession. In the 47 years from 1913 to 1960, the only actual, physical possession shown on the land by Turner was the building and use of a sawmill from 1920 to 1923, the planting of a garden at one time before 1919, and the cutting of timber in 1933 and 1940. The land was open and vacant. The 180-acre tract was unfenced on the north, and the 44-acre portion of it was unfenced on the south. Between 1940 and 1960, the only evidence of physical acts of Turner as to the land was that of looking at it and walking upon it on three or four occasions. There were no improvements on the land, no cultivation, and no cattle of Turner's, just growing trees and brush.

■ There was a good deal of evidence which might support a *claim* of ownership and constructive possession by Turner: payment of taxes and the execution of mortgages and oil and gas leases. But there must be prior actual possession to initiate "prior possession" in trespass to try title.

■ In any event, the evidence of possession by Turner was not sufficient to establish prior possession as a matter of law. It therefore was an issue of fact. The burden was upon Turner to establish this fact finding as part of his case in trespass to try title. In Garcia v. Garza, Tex.Civ. App., 161 S.W.2d 297 (1942, no writ), it was held that prior possession was an independent ground of recovery. The holding was sound. As stated at the outset, in a trespass to try title case, the plaintiff must recover upon the strength of his own title; and the grounds of recovery are proof of (1) regular chain from the sovereign, (2) superior title from a common source, (3) adverse possession, or (4) prior possession. Each of these is an independent ground. In the Garcia case, it was held that if no request was made for the submission of special issues under the theory of prior possession, this ground of recovery was considered to have been waived. If we assume that there was an issue of fact here on prior possession, no special issue was given or requested thereon. This ground of recovery was therefore waived. The Garcia case was followed on this point by Stringfellow v. Brown, Tex.Civ.App., 326 S.W.2d 1 (1959, no writ).

Turner did not establish his title under any other theory, and the courts below erred in holding that Turner established his title or right by prior possession.

This holding makes it unnecessary for us to pass on Land's remaining point of error: that since Turner was not in actual possession when Land entered, Land could successfully defend this suit by showing the outstanding legal title in a third person. Compare: Alexander v. Gilliam, 39 Tex. 227; House v. Reavis, 89 Tex. 626, 35 S.W. 1063 (1896); Humble Oil & Refining Co. v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218 (1934, writ refused); Teagarden v. Patten, Tex.Civ.App., 107 S.W. 909 (1908, writ refused); with Lund v. Doyno, 127 Tex. 19, 91 S.W.2d 315; Bates v. Bacon, 66 Tex. 348, 1 S.W. 256; Dawson v. Tumlinson, 150 Tex. 451, 242 S.W.2d 191 (1951); and Wehrly v. Humble Oil & Ref. Co., Tex. Civ.App., 64 S.W.2d 396 (1933, writ refused). See Casenotes, 12 Tex.L.Rev. 523, and 16 Tex.L.Rev. 598.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff Turner take nothing.

189

SMITH, Justice (concurring).

I agree with the result. It is my view that Turner failed, as a matter of law, to establish title under the theory of prior possession. This being true, there is no necessity to go further and discuss the question of whether or not Turner abandoned possession of the land involved in this suit. Nor is the discussion of constructive possession on the part of Turner necessary. The record shows that Stokes was and is the true owner of the land. Stokes is presumed to be in constructive possession.

Since Turner failed to discharge the burden of proof resting with him to prove title through prior possession or otherwise, it is proper to enter judgment that Turner take nothing.