**Rufus L. TURNER et al., Appellants,**

v.

**E. M. LAND, Appellee.**

**No. 584.**

Court of Civil Appeals of Texas, Tyler.

Oct. 7, 1971.

Rehearing Denied Oct. 28, 1971.

Sallas, Griffith & Meriwether, Joe E. Griffith, Crockett, for appellants.

Granberry & Hines, F. P. Granberry, Crockett, for appellee.

DUNAGAN, Chief Justice.

This is a summary judgment case. Appellants on March 25, 1965, filed their original petition in statutory trespass to try title as to 340 acres of land in Houston County, Texas. Appellee, by his second amended original answer, disclaimed as to all of such premises except a certain 44 acre tract out of the James M. Love Survey in Houston County, Texas, which is the basis of this lawsuit and entered his plea of not guilty. Both parties filed motions for summary judgment in the trial court based, in essence, upon the judgment of the Supreme Court of Texas in the case of E. M. Land v. W. R. Turner, 377 S.W.2d 181 (1964). The Court denied appellants-plaintiffs' motion and granted appellee's motion for summary judgment. W. R. Turner, plaintiff in such cause, was a predecessor in title of the appellants-plaintiffs in the instant cause. Land v. Turner, supra, was also a trespass to try title action and the land in controversy therein was the same as involved in the instant cause.

Appellants, by their sole point of error, contend that the trial court should not have granted appellee-defendant's summary judgment "(f)or the reason that the judgment of the Supreme Court of Texas in Land v. Turner * * * determined title to said premises to be in a third party which third party conveyed said premises to Appellants."

The record shows that on September 6th, 1913, R. C. Stokes conveyed to E. B. Stokes 140 acres of the Love Survey, and on the same day, the deed was filed for record. The premise in question is a part of the land described in and conveyed by such deed. Thereafter on November 15, 1913, R. C. Stokes conveyed to W. R. Turner, appellants' predecessor in title, 180 acres of the same survey, which included the same 140 acre tract mentioned above and also included the land in controversy. This deed was filed for record on October 20, 1914. On September 23, 1919, E. B. Stokes reconveyed to R. C. Stokes the 140 acre tract covered by the 1913 deed from R. C. Stokes to

E. B. Stokes. The 1919 deed was placed of record on December 19, 1919. E. B. Stokes thereafter died.

Upon the trial of the first case, W. R. Turner, the plaintiff therein and the herein appellants' predecessor in title, did not choose to offer into evidence the latter deed; therefore, such deed (the 1919 deed) was not before the Supreme Court in the case of Land v. Turner, supra.

While the appeal of Land v. Turner, supra, was pending, Cora Stokes (the widow of E. B. Stokes), individually and as independent executrix of the estate of Dr. E. B. Stokes, deceased, on April 30, 1963, conveyed to W. R. Turner the land in dispute in both cases. On March 16, 1964, W. R. Turner, individually and as independent executor of the estate of Fannie Turner, deceased, conveyed to his children, Rufus L. Turner, Alma Turner Tillman, Corine Collins and W. A. Turner (appellants-plaintiffs in the instant case), the land here in controversy.

Since E. B. Stokes reconveyed the land in question to R. C. Stokes in 1919, it is quite obvious from the record before us that at the time Cora Stokes executed the deed to W. R. Turner in 1963 she did not have any title to convey. Therefore, W. R. Turner, appellants' predecessor in title, did not receive any right, title or interest in or to said land by virtue of such deed.

■ Appellee concedes that at the time of the trial of the first case W. R. Turner, appellee therein, owned the record title to the land here involved by virtue of the deed of conveyance from E. B. Stokes to R. C. Stokes in 1919, but appellee contends that due to the failure of W. R. Turner in the trial of the first case to put into evidence the 1919 deed and thereby show record title to the 44 acre tract in him, said deed now avails him nothing.

It is true that the Supreme Court in Land v. Turner, supra, said: "It is apparent, at the outset, that under the proof made in this case, the record title to the 44 acres in ques-

tion is in the heirs of Dr. E. B. Stokes." By Turner's failure, on the trial in the first case, to put into evidence the 1919 deed from E. B. Stokes to R. C. Stokes, the Supreme Court, at the time it delivered its decision in Land v. Turner, supra, in 1964, was not made aware of the fact that at the time of the trial of said case the record title to the land was actually vested in Turner and not the heirs of E. B. Stokes.

We do not consider the statement of the Supreme Court above mentioned to amount to a decree or award of title to said land to the heirs of E. B. Stokes. The judgment of the Supreme Court rendered in Land v. Turner, supra, was merely that W. R. Turner take nothing by his suit and that Turner pay all costs expended in both of the appellate courts. Said statement was made on the record then before the court. It is now shown that said record was incomplete and misleading as to the true facts as they existed at the time of the trial of the case. In our opinion the above mentioned statement of the Supreme Court was merely made to emphasize that the record title was not vested in W. R. Turner, the appellee on the appeal and plaintiff in the trial court. The Supreme Court found that Turner did not show any title into himself. This was his burden of proof under the law. Hence, the Court proceeded to render a take-nothing judgment against W. R. Turner. As a matter of fact, under the following authorities, the effect of the take-nothing judgment entered in the first suit was to vest title in E. M. Land, not the heirs of E. B. Stokes.

In Ogletree v. Crates, 363 S.W.2d 431, 435 (1963), our Supreme Court said:

"The rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former trial, as well as those which were actually tried." Citing Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 99, 47 Am.St.Rep. 79.

In Hejl v. Wirth, 161 Tex. 609, 343 S.W. 2d 226 (1961), our Supreme Court said:

"It has long been the rule in this State that in a trespass to try title suit, the plaintiff must recover upon the strength of his own title. Kauffman v. Shellworth, 64 Tex. 179; Hovel v. Kaufman, Tex.Com.App., 1926, 280 S.W. 185; Davis v. Gale, 1960, 160 Tex. 309, 330 S. W.2d 610. If the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant. The rule is a harsh one, but it also has been well established as a rule of land law in this State. French v. Olive, 1887, 67 Tex. 400, 3 S.W. 568; Permian Oil Co. v. Smith, 1934, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152."

In Halbert v. Green, 156 Tex. 223, 293 S.W.2d 848 at p. 851 our Supreme Court said:

"Petitioner's general plea in trespass to try title and respondents' plea of not guilty put in issue the title to the entire ⅛th mineral interest, and the effect of the 'take nothing' judgment was, as between the parties, to divest all title to the entire interest out of petitioner, Halbert, and to vest the same in respondents Green. * * *"

Also see Kendrick v. Tidewater Oil Company, 387 S.W.2d 122 (Tex.Civ.App., Tyler, 1965, writ ref., n. r. e.); Federal Land Bank of Houston v. Brooks, 135 Tex. 370, 143 S.W.2d 928; Taylor v. W. C. Belcher Loan and Mortgage Co., 265 S.W. 403 (Tex.Civ.App., Austin, 1924, n. w. h.); 56 Tex.Jur.2d p. 293, sec. 141; 41 T.L.R. 189 and Article 7391 Vernon's Tex.Civ.St. [1]

In Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564 (1937), we find these quotes:

" * * * It must be borne in mind that the purpose of the law remains constant to prevent the failure of justice as the result of permitting the retrial between the same parties or their privies of a cause of action or of an issue which has been finally disposed of.

\*      \*      \*      \*      \*      \*

" * * * The fact that the record in this case now shows that Monroe could have prevailed in his suit No. 854 if he had been sufficiently diligent does not weaken but only serves to emphasize the principles reaffirmed in this opinion. 'When a party passes by his opportunity, the law will not aid him. In Ewing v. McNairy, 20 Ohio St. (315) 322, the judge says: "By refusing to relieve parties against the consequence of their own neglect, it seeks to make them vi*li*gant and careful. On any other principle, there would be no end to an action, and there would be an end to all vigilance and care in its preparation and trial." ' " Citing Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 99, 47 Am.St.Rep. 79.

In a summary judgment proceeding the movant has the burden of producing summary judgment proof which establishes, as a matter of law, that there is no genuine issue of fact as to any essential element of its cause of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827, 828 (Tex.Sup., 1970).

Accepting as true all evidence which tends to support appellants' position and giving them the benefit of every reasonable inference which properly can be drawn therefrom, which we must do in a summary judgment proceeding, we hold that appel-

[1]. "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recov- ered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action."

lee has established, as a matter of law, that there is no genuine issue of fact as to any essential element of appellants' cause of action.

The judgment of the trial court is affirmed.