R.G. PAYNE, Appellant,

v.

G.L. VINSON, Appellee.

No. 3–87–118–CV.

Court of Appeals of Texas, Austin.

Nov. 16, 1988.

Rehearing Denied Dec. 21, 1988.

Charles W. Wendlandt, Jr., Minter, Joseph & Thornhill, Austin, for appellant.

David M. Moore, Wilson, Grosenheider & Burns, Austin, for appellee.

Before SHANNON, C.J., and
GAMMAGE and CARROLL, JJ.

GAMMAGE, Justice.

R.G. Payne appeals from a trespass to try title judgment, entered upon a jury verdict, in favor of G.L. Vinson. On Payne's motion, the trial court subsequently "reformed" the judgment, changing the angle of a boundary line in favor of Payne. By cross point of error, Vinson appeals from this amended judgment. We will reverse the judgment and remand the cause for entry of judgment consistent with this opinion.

Payne and Vinson hold titles from a common source, and their dispute arises over the validity of Payne's title to the property his immediate predecessor purportedly conveyed to him. In 1947, G.A. Draper purchased 17 acres of land on what is now Lake Travis from the Lower Colorado River Authority (LCRA). In 1949, Draper conveyed a lot west of, and contiguous to, what is now the Payne property to Will and Robert L. Carleton (the Carleton property). In 1950, Draper deeded what is now the Payne property to Dave and Mamie Gustafson, retaining for himself the land immediately east of that conveyed to the Gustafsons. This deed also includes what is described as a 100-foot wide easement to the lake south of the conveyed property, by parallel extensions "of the east and west [property] lines ... to the water's edge." In 1958, the Gustafsons conveyed their property to Warren Neal. In 1983, Neal conveyed the parcel of land in question to Payne. In 1976, the Draper estate conveyed the land retained by Draper to Vinson.

In 1984, Payne began erecting a fence along what he believed to be the eastern boundary separating his and Vinson's property. Jim Nicholson, Vinson's ranch overseer, advised Payne that he was in error as to the location of that line. Vinson investigated Payne's title and notified Payne in writing that Payne did not have good title to the entire tract conveyed to him in the deed from Neal. Following several contacts between Payne and Vinson, Payne filed this trespass to try title suit against Vinson. The only issue before the jury regarding the property dispute was what Draper intended the distance of the northern boundary line to be in his 1950 conveyance to the Gustafsons. Faced with options of 100 feet, 121.56 feet, and 130.7 feet, the jury returned a verdict of 100 feet.

By his first two points of error, Payne essentially argues there was no evidence or, alternatively, insufficient evidence, to support the jury's verdict. In deciding a no evidence point, we may consider only that evidence which, viewed in its most favorable light, supports the fact findings and we must reject all contrary evidence. *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977). In considering an insufficiency claim, we consider all evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362 (1960).

Vinson called Weldon Klattenhoff, a registered land surveyor, to testify as an expert witness. Klattenhoff testified that he surveyed the Payne property in 1986, and in the process consulted three previous surveys: 1) the J. Leroy Bush survey of 1983, upon which the deed from Neal to Payne was based; 2) the Harold Williams survey of 1974, commissioned by Neal; and 3) the Arnold Kellersberger survey of 1947, covering the original 17 acres Draper purchased from the LCRA.

The Draper to Gustafson deed describes a 100-foot northern boundary line for the Payne property, reciting that the line is to begin at the northeast corner of the Carleton property (the location of which is not in dispute), and to follow the south line of a road in a southeasterly direction for 100 feet. The deed fails, however, to recite any angle measured in specific degrees. Because the road and the northern boundary

line run at an angle, the deed describes a lot less than 100 feet wide. See Appendix.

The Williams survey plat shows a northern boundary line for the property running a distance of 120.81 feet along the road, at an angle of south 55°, 55′ east. The Kellersberger survey shows a 130.7 foot northern boundary, running at an angle of south 49°, 59′ east.

Klattenhoff testified that, accompanied by Nicholson, he began his survey by following the Bush survey, but, using a metal detector, he found an old, rusted, cold rolled iron pipe one-half foot beneath the ground at the northwest corner of the property (at the point where it adjoins the Carleton property). Klattenhoff stated that Nicholson thought he knew where the pipe at the east end of the property line should be found, and, with use of the metal detector, Nicholson found a similar iron pipe within 30 seconds after he began looking for it. Nicholson found this pipe 100.17 feet east of the point where he found the first pipe. Klattenhoff testified that these pipes were crucial in forming his opinion, and that he believed Draper intended a 100–foot northern boundary line with an angle of south 49°, 10′ east.

There is also testimony from Nicholson that he walked Draper's property with him, setting rocks around the iron pipe markers, that Draper showed him a pipe at the eastern point of the disputed northern property line, and that Draper stated it marked the boundary line of the Gustafson property. Nicholson explained that he remembered seeing the northeastern pipe marker at a certain place near the road, which is why he found it so quickly with the metal detector, and that he also remembered seeing a fence post and pin within two or three feet of the corner of the Neals' patio in 1981 or 1982, but that both were now gone.

Regarding the Williams survey, Klattenhoff testified that he found iron rods, or pins, in the exact locations indicated by Williams, and it was his opinion that Williams set the rods himself because of notations on the Williams' plat that the rods, or pins, were *set* rather than *found*. Klattenhoff testified that it is customary for a surveyor to note that a pin is set when he himself sets it, and that a stake, rod, or pin is distinguished from a pipe.

Two copies of the Kellersberger survey, both signed by Draper, showed the Payne property and the two parcels immediately to the west of it to each be 100 feet wide. Payne argues Draper's signatures on the plats acknowledge his intent to convey a parcel 100 feet wide. Klattenhoff testified, however, that these plats are suspect because even though they were dated in 1947, the year Draper purchased the original 17 acres from the LCRA, they purported to show the Gustafson parcel when it had yet to be segregated from the original tract. He added that these plats could easily have been amended and copied without detection of any changes.

Vinson testified that he owned property on the Draper ranch since the 1950's, that he recalled the Neals adding a screened patio to the old Gustafson house in about 1968, and that when he looked at the property in 1983 he noticed the screened patio came within one to one and one-half feet from the pin and corner of a fence. A rock patio now exists which extends over the fence line.

The Paynes testified that Nicholson originally showed them the house and property, that at that time the fence posts were located 15 or 20 feet from the edge of the patio, that Nicholson told them Neal had placed the posts, and that the Paynes believed the boundary lines followed the fence posts.

Deeds conveying four adjoining 100–foot wide parcels of land were also in evidence, which Payne argues demonstrate Draper's intent to convey a 100–foot wide parcel to the Gustafsons.

Viewing this evidence in the light most favorable to the jury verdict, there is ample evidence from which the jury could find that Draper intended the 100–foot northern boundary line described in his deed to the Gustafsons, and not, as Payne contends, that Draper intended to convey a 100–foot wide lot. Of the four surveys in evidence, the jury chose to believe, and there is sufficient evidence to support, that the Klatten-

hoff survey reflects the intent of the Draper to Gustafson deed. Points of error one and two are overruled.

◼ By his third point of error, Payne argues the trial court erred in admitting Nicholson's hearsay testimony regarding Draper's statements about the buried iron pipes. Before Payne finally objected, however, Nicholson testified at length about Draper's statements. Any objection to ordinarily inadmissible testimony is waived if no objection is made when similar testimony is elicited. *Gonzales v. Texas Employers' Insurance Ass'n,* 419 S.W.2d 203 (Tex. Civ.App.1967, no writ); *Texas Power & Light Co. v. Holder,* 385 S.W.2d 873 (Tex. Civ.App.1964), writ ref'd n.r.e. 393 S.W.2d 821 (Tex.1965).

◼ Even were we to find Nicholson's testimony inadmissible hearsay and the objection not waived, Payne must show that the trial court's error, if any, was reasonably calculated to cause, and probably did cause, the rendition of an improper verdict. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex. 1962); *Hall Const. Co. v. Texas Industries,* 748 S.W.2d 533 (Tex.App.1988, no writ). We determine whether Payne was so harmed from a review of the entire record. *Gomez Leon v. State,* 426 S.W.2d 562, 565 (Tex.1968). Our examination discloses evidence, other than Nicholson's testimony, clearly sufficient to support the jury's verdict. Payne's third point of error is overruled.

◼ By his fourth point of error, Payne argues the trial court erred by excluding a 1976 survey plat prepared for the Draper estate. In trespass to try title, a plaintiff must recover on the strength of his own title, not on the weakness of the defendant's. A plaintiff may recover by proving: 1) regular chain of title from the sovereign; 2) superior title from a common source; 3) adverse possession; or 4) prior possession. *Land v. Turner,* 377 S.W.2d 181, 188 (Tex.1964).

◼ The excluded plat describes the land Vinson purchased from Draper. Payne failed to file the plat at least three days before trial as required by Tex.R.Civ.P.

Ann. 798, to show common source of title. Vinson objected pursuant to Rule 798. He further asserted that the plat was hearsay, that Payne had not proved up the surveyor's qualifications, and that the plat was irrelevant for showing anything other than a common source of title. The trial court sustained the objection without specifying the grounds.

Payne now argues generally and without citation of authority that the plat was not hearsay and that the surveyor was qualified. He further argues the plat was relevant to show acquiescence by Vinson in the boundary line urged by Payne, quoting *Yates v. Hogstrom,* 444 S.W.2d 851, 853 (Tex.Civ.App.1969, no writ). Payne fails to note that the length of time required to show acquiescence must exceed the time required to obtain title by adverse possession, circumstances clearly not present in this case. The only other case Payne cites under this point of error, *Shults v. Bartz,* 431 S.W.2d 416 (Tex.Civ.App.1968, no writ), deals with whether a deed was sufficiently ambiguous to avoid summary judgment and is inapplicable.

Even were we to find the plat admissible under one of Payne's other arguments, he does not address its exclusion under Rule 798, and thereby waives any error. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768 (Tex.App.1987, writ ref'd n.r.e.), *cert. denied,* —— U.S. ——, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *Benham v. Benham,* 726 S.W.2d 618 (Tex.App.1987, writ ref'd n.r.e.); *see generally Mercedes Produce Co. v. Duncan,* 249 S.W. 251 (Tex.Civ.App. 1923, no writ). We conclude that proof of Vinson's title had no relevance other than to show common source under Rule 798, and Payne waived any objection he may have had to the plat's exclusion under this rule. Payne's fourth point of error is overruled.

◼ By his fifth point of error, Payne argues the trial court erred in denying his motion for judgment notwithstanding the verdict because the evidence conclusively establishes his prior possession of all the property described in his deed from Neal. In a reply brief, Payne argues for the first

time that although he pleaded a statutory trespass to try title, this cause was actually tried as a boundary suit and, consequently, formal proof of prior possession to show superior title was not required. He relies on *Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981). *Plumb* is a case in which the trial court granted the defendant's motion for directed verdict at the close of the plaintiff's evidence. The Supreme Court noted in *Plumb* that the plaintiff had asserted "more than a pure trespass to try title action" because he additionally alleged that his predecessors acquired title to the disputed land and had used it for more than 50 years, and sought an injunction to prevent the defendant from relocating a fence which would obstruct use of the disputed property. The Supreme Court further noted that there was some evidence in *Plumb* that the plaintiff and his predecessors were in actual, exclusive and peaceable possession of the property at the time the dispute arose and for many years prior thereto. Such is not the case before us.

Payne pleaded only trespass to try title and may not now avoid his burden to show actual, exclusive and peaceable possession of the disputed property. *Land v. Turner* at 186. Having failed to submit an issue to the jury on prior possession, Payne waived the issue unless he can show prior possession as a matter of law. *Land v. Turner*, 377 S.W.2d at 188. Even were we to adopt the lesser standard in *Plumb* that Payne urges, he would still not prevail on this issue. Unlike the situation in *Plumb*, evidence of Payne's claim of title is disputed; the trial court's judgment was entered upon the jury's verdict rather than a directed verdict; there is no undisputed evidence of predecessors' acquisition of title or long term use; and Payne seeks no injunctive relief or other equitable remedy to prevent Vinson's use of the disputed property. Moreover, there is no undisputed evidence, as in *Plumb*, of Payne or his predecessors being in actual, exclusive and peaceable possession of the property at or before the time the dispute arose.

The evidence shows only that when Payne purchased his property, the disputed area was undeveloped except for some fence posts, that Vinson used the property for grazing cattle, and that the dispute arose when Vinson became aware of Payne's attempt to fence the property. Payne's fifth point of error is overruled.

By cross point of error, Vinson contends the trial court erred by granting Payne's motion to reform the judgment. We agree. The jury answered special issue No. 2 in favor of Vinson, finding the Draper to Gustafson deed intended a 100–foot northern boundary line. No issue was submitted regarding the angle of the line. The jury's finding was supported by evidence of the two cold rolled iron pipes found underground, separated by a distance of 100.17 feet and consistent with the Klattenhoff survey indicating an angle of south 49°, 10' east.

The trial court originally entered judgment consistent with the jury's verdict, reflecting an angle of south 49°, 10' east for the northern boundary line of Payne's property. The court subsequently granted Payne's motion to reform the judgment to reflect an angle of south 54°, 31' east. The only evidence supporting the latter angle is the Bush survey, which recites a 121.56 northern boundary line and is contrary to the jury's verdict. By disregarding the jury's verdict, the trial court substantively granted Payne a judgment notwithstanding the verdict, not a reformed judgment.

To sustain a judgment notwithstanding the verdict, the reviewing court must determine there is no evidence upon which the jury could have relied for its findings. All evidence must be viewed in a light most favorable to the party against whom the motion is sought. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983). The evidence previously considered herein provides ample support for the jury's verdict, and we find the only angle of the northern boundary line of Payne's property consistent with that verdict to be south 49°, 10' east. Vinson's cross point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded for entry of judgment consistent with this opinion.

APPENDIX